## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

JULIA YORDÁN,

      Plaintiff,

      v.

AMERICAN POSTAL WORKERS UNION,
AFL-CIO, *et al.*,

      Defendants.

Civil No. 12-1764 (BJM)

### OPINION AND ORDER

Julia Yordán, a retired unionized postal worker, sued the American Postal Workers Union, AFL-CIO ("the Union") for breach of the duty of fair representation, and the United States Postal Service ("USPS") for enforcement of an award in her favor in a prior arbitration. Docket No. 1 ("Complaint"). The Union now moves to dismiss the claim for insufficient service or in the alternative for failure to state a claim. Docket No. 16 ("Motion"). Yordán opposed. Docket No. 17 ("Opposition"). The Union's motion is **granted**.

### MOTION TO DISMISS FOR IMPROPER SERVICE
#### I.    Personal Jurisdiction Standard

A plaintiff has the burden of proving the court's personal jurisdiction over a defendant. *See Negrón-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 23 (1st Cir. 2007). Courts choose among three frameworks when deciding motions to dismiss for lack of personal jurisdiction. Under the ordinary "prima facie" approach, a court "considers only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Id.* (quotation marks omitted). The court also considers any uncontradicted facts introduced by the defendant. *Id.* Alternatively, the court may need to hold an evidentiary hearing where it can resolve credibility, make binding findings of fact, and "adjudicate the jurisdictional issue definitively before the

case reaches trial." *Foster-Miller, Inc. v. Babcock & Wilcox Canada*, 46 F.3d 138, 146 (1st Cir. 1995). Finally, should jurisdictional facts be "bound up with the claim on the merits" such that fact-finding is undesirable, a court may choose to pass only on the likelihood of the facts establishing personal jurisdiction, while leaving disputed facts open for trial. *Id.*

## II.     Factual Background

The following facts are taken from the complaint and the documentary evidence filed with the Opposition. On September 14, 2012, Yordán sued the Union and USPS. *See* Complaint. Summons were issued on September 17. Docket No. 4. Yordán hired APS International, Ltd. ("APS") to serve the Union at its national offices in Washington, D.C. Docket No. 17-1. APS made its first attempt to serve the Union on January 10, 2013. *Id.* The Union informed APS that only Cliff Guffie was authorized to accept service and that he was not in that day. *Id.* On January 11, APS made a second attempt, but the Union informed APS that Guffie would be out of the office all day. *Id.* On January 14, APS made a third attempt, but the Union informed it that Guffie was again out of the office and would not return until January 17. *Id.* On February 2, APS signed an affidavit stating that it believed the Union was evading service. *Id.* The Union asserts that Yordán took no further action until May 9, 2013 when she served Mr. Gonzalez, the president of the APWU Caribbean Area Local ("the Local"). Motion at 3, 9. Yordán does not provide evidence to the contrary and does not contest the Union's contention. *See* Opposition at 2.

## III.    Discussion

The Union argues that the Local is not its agent and therefore Yordán failed to effect service by only serving the Local. Even if Yordán did effect service by serving the Local, the Union argues that service was untimely.

### A.     Effective Service

In suits between a Postal Service union and an employee, "[t]he service of summons, subpoena, or other legal process of any court of the United States upon an

officer or agent of a labor organization, in his capacity as such, shall constitute service upon the labor organization." 39 U.S.C. § 1208(e). When only a local union representative has been served, the local union must be an agent of the national union for service to be sufficient. *Ross v. Runyon*, 156 F.R.D. 150, 153 (S.D. Tex. 1994) (explaining in a case against the APWU that "service of process on an autonomous local union is not sufficient to acquire personal jurisdiction over the national union with which it is affiliated."). Whether a local union is the agent of a national union for service of process depends on the "actual relationship" between the local and national. *Morgan Drive Away Inc. v. International Bros. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.*, 268 F.2d 871, 875 (7th Cir. 1959). Courts look to the constitutions of the national and local unions, the manner in which local officials are appointed, and the kinds of activities a local union is authorized to do on behalf of the national. *See id*. at 875-876. Where a local branch operates as an autonomous entity, service upon a local officer is not service upon the national union. *Ross v. Runyon*, 156 F.R.D. at 153. Ultimately, plaintiffs have the burden of establishing that proper service has been effected. *Bolivar v. Director of FBI*, 846 F. Supp. 163, 166 (D.P.R. 1994) (citing *Saez Rivera v. Nissan Mfg. Co.*, 788 F.2d 819, 821 n. 2 (1st Cir. 1986)). *See also* 5B Wright & Miller, *Federal Practice and Procedure*, Civil 3d § 1353 at 342 (2004).

Here, Yordán failed to show that the Local is an agent of the Union. She only states that "[t]here is no evidence in the record, other than the union's say-so to the effect that [Gonzalez] . . . does not have any official duties with the parent union." Opposition at 2. She provides no further evidence about the constitutions of the Local and the Union, the way in which officers are appointed in the Local, or what authorized activities the Local can engage in.  In sum, she failed to meet her burden of showing that the Local is an agent of the Union and thus has not proven that service was sufficient.

### B.        Timely Service

Regardless of whether the Local is an agent of the Union, service was also untimely. Rule 4(m) requires that plaintiffs serve defendants within 120 days after filing the complaint. Fed. R. Civ. P. 4(m). If the plaintiff fails to serve the defendant within 120 days, the court must dismiss the action unless the plaintiff shows good cause as to why service was not made. *Padilla Cintrón v. Rossello Gonzalez*, 247 F. Supp. 2d 48, 60 (D.P.R. 2003) (citing *Benjamin v. Grosnick*, 999 F.2d 590, 591 (1st Cir. 1993)). The burden of demonstrating good cause is on the plaintiff. *United States v. Ayer*, 857 F.2d 881, 884-85 (1st Cir. 1988). Good cause is typically found when the plaintiff's failure to serve is attributable to a third person, such as the process server or when the defendant evades service. *Moreno-Perez v. Toledo-Davila*, 266 F.R.D. 46, 49 (D.P.R. 2010). Plaintiff's "effort and diligence in achieving service of process" is also material. *Serrano v. Figueroa-Sancha*, 878 F. Supp. 2d 301, 314-315 (D.P.R. 2012); *Rodriguez-Sanchez v. Acevedo-Villa*, 269 F.R.D. 116, 119 (D.P.R. 2010). Moreover, "[l]ast minute attempts at service, absent some explanatory justification, do not establish good cause." *McIsaac v. Ford*, 193 F. Supp. 2d. 382, 383 (D. Mass. 2002). Failure to seek an extension of time may also weigh against a plaintiff's showing of good cause when the plaintiff is aware that service will not be timely. *See Rodriguez-Sanchez*, 269 F.R.D. at 119. *See also Barco Arroyo v. FEMA*, 113 F.R.D. 46, 48 (D.P.R. 1986). Good cause for failing to meet the 120-day limit does not extend indefinitely. *Padilla Cintrón*, 247 F. Supp. 2d at 61.

Notwithstanding the absence of good cause, the court has discretion to extend the time for service based on a number of factors. *Moreno-Perez v*, 266 F.R.D. at 49. These factors include whether the defendant received actual notice, whether the defendant would suffer prejudice from late notice, and whether the plaintiff would be severely prejudiced if the complaint were dismissed. *Id.* at 50. A defendant suffers prejudice when he or she does not receive notice of the suit with sufficient time to mount an effective defense. *Compare id*. at 50-51 (explaining that "both Medina and Santos were aware of

the claims asserted against them," so their "ability to defend themselves [was not] affected or diminished.") *with Bunn v. Gleason*, 250 F.R.D. 86, 90-91 (D. Mass. 2008) (explaining that the failure of timely service meant five years had elapsed since the events in question, diminishing defendant's memory of the events and his ability to mount an effective defense). A plaintiff suffers prejudice when he or she will be unable to refile a claim due to the statute of limitations. *Bunn*, 250 F.R.D. at 90. This prejudice is mitigated, however, if the plaintiff can still pursue a claim against other defendants. *Id.* at 91.

Yordán argues that there was good cause for the delay because the Union evaded service. *See* Opposition at 2. She points to the three attempts made by APS during the 120-day window. *Id.* In *McIsaac*, the plaintiff's efforts to arrange same-day service were frustrated and he failed to serve the defendant within the 120-day period. 193 F. Supp. 2d at 383. The court found that his frustrated efforts did not constitute good cause. *Id.* In *Sullivan v. Mitchell*, the plaintiff waited until eight days before the expiration of the 120-day window to hire a process server and the process server failed to serve the defendant in those eight days. 151 F.R.D. 331, 333 (N.D. Ill. 1993). Since the plaintiff "gave no thought to personal service until a few days before the expiration," there was no good cause for the delay. *Id.* Likewise, in the case here, Yordán did not attempt to serve the Union until the last week of the 120-day time period and her "frustrated efforts" do not constitute good cause.

Even granting for the sake of argument that those efforts constituted good cause, Yordán fails to explain why she waited four more months to serve the Local. *See* Opposition at 2-3. In *Padilla Cintrón*, the plaintiff's process server went into labor while attempting to serve the defendants and the defendants were not served until two months later. 247 F. Supp. 2d at 61. Though the process server's emergency might have initially constituted good cause, it did not explain the subsequent two months of delay. *Id.* Moreover, the court was "puzzled as to why Plaintiff did not seek an extension of time"

when she knew that the defendants had not been served. *Id.* Here, Yordán similarly fails to explain the four months delay between the expiration of the 120-day period and service on the Local. And she did not file for an extension of time, despite her knowledge that she had failed to timely serve the Union. Yordán has therefore failed to show good cause for the untimely service.

Yordán will not be able to refile if the complaint is dismissed because the statute of limitations for her claim against the Union will have run. But as I explain below, the statute of limitations expired before Yordán filed the complaint in the first place. These factors weigh against extending time for service and I decline to do so. The Union is entitled to dismissal of the claim for improper service.

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

In the alternative, the Union argues that Yordán also failed to state a claim upon which relief can be granted. Even though the Union is entitled to dismissal for improper service, I will address this claim as well.

### I.        Pleading Standard

To survive a motion to dismiss at the pleading stage, "an adequate complaint must provide fair notice to the defendants and state a facially plausible legal claim." *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011).  In evaluating a motion to dismiss, the court first sorts out and discards any "'legal conclusions couched as fact' or 'threadbare recitals of the elements of a cause of action.'" *Id.*  (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (alteration marks omitted).  The remaining "[n]on-conclusory factual allegations" are fully credited, "even if seemingly incredible." *Id.*  Taken together, they must "state a plausible, not a merely conceivable, case for relief." *Id.*  At the same time, courts must not "forecast a plaintiff's likelihood of success on the merits." *Id.*

If a court considers materials outside the pleadings, it must give notice to the parties and convert the motion to dismiss into a motion for summary judgment.  Fed. R.

Civ. P. 12(d).  But where allegations "are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings," and may be considered without triggering conversion.  *Beddall v. State St. Bank & Trust Co.*, 137 F.3d 12, 17 (1st Cir. 1998). Moreover, if the court disregards the supplied materials, notice and conversion is not required.  *Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B.*, 958 F.2d 15, 18 (1st Cir. 1992).

## II.    Factual Background

The following facts are taken from the Complaint. Yordán is a retired employee of the USPS. Complaint ¶ 3.1. While working for USPS, Yordán was represented by the Union. *Id.* at ¶ 3.2. At some point, Yordán was stripped of the time-keeping duties that were a part of her job description, and the Union filed a grievance on her behalf. *Id.* at ¶¶ 3.3-4. This grievance eventually went to arbitration, and in July 2006, the arbitrator issued an award in Yordán's favor. *Id.* at ¶¶ 3.5-6. The award was restated and clarified on October 15, 2007. *Id.* at ¶¶ 3.6-7.

Despite the award in Yordán's favor, the Union did not request payment of the award from USPS until August 5, 2009. *Id.* at ¶ 3.9. "In desperation," Yordán wrote to the Union several times, met with Union representatives, and even wrote to the Postmaster General. *Id.* at ¶¶ 3.10-12. Finally, on November 13, 2009, Union president William Burrus wrote Yordán assuring her that enforcement procedures had been initiated. *Id.* at ¶ 3.13. That was the last direct communication Yordán received from the Union, despite additional written demands on her part. *Id.* at ¶¶ 3.14-15. On January 26, 2010, union representative Daniel Soto copied Yordán on an email he sent to the Union's Director of Industrial Relations, Greg Bell, asking Bell to initiate enforcement proceedings. *Id.* at ¶ 3.16. She has heard nothing further from the Union about the enforcement proceedings, even though she wrote Bell on March 8, 2010. *Id.* at ¶ 3.17. To date, Yordán has not

received her award from USPS. *Id.* at ¶ 3.8. Yordán filed this complaint suing the Union on September 14, 2012. Complaint ¶¶ 4-5.

### III.   Discussion

The Union argues that the statute of limitations for the breach of the duty of fair representation has run and Yordán thus failed to state a claim on which relief could be granted.

Plaintiff invokes section 301 of 29 U.S.C. § 185 in her complaint against USPS and the Union. Complaint ¶ 1.1. A section 301 action brought simultaneously against an employer for breach of contract and a union for breach of the duty of fair representation is considered a "hybrid" claim. *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 165 (1983). The statute of limitations for § 301 hybrid claims is six months. *Id.* at 155. It begins to run when the plaintiff is aware or should have been aware of the breach of duty. *Serrano Sanchez v. Puerto Rico Marine Mgmt., Inc.*, 593 F. Supp. 787, 792 (D.P.R. 1984). Union inaction should indicate to the plaintiff that the union breached its duty of fair representation. *Metz v. Tootsie Roll Industries, Inc.*, 715 F.2d 299, 304 (7th Cir. 1983); *Delaney v. District of Columbia*, 612 F. Supp. 2d 38, 43 (D.D.C. 2009); *Pulliam v. United Auto Workers*, 354 F. Supp. 2d 868, 872 (W.D. Wisc. 2005). Once the statute of limitations begins to run, it may be tolled while an employee is pursuing formal or required intra-union procedures. *James v. Georgia-Pacific Corp.*, 986 F. Supp. 34, 40 (D. Me. 1997); *Christiansen v. APV Cepaco, Inc.*, 178 F.3d 910, 1916 (7th Cir. 1999). The plaintiff must make diligent efforts to pursue internal appeals to toll the statute. *Howell v. General Motors Corp.*, 19 Fed. Appx. 163, 168 (6th Cir. 2001); *Tobins v. Barry*, 678 F. Supp. 1018, 1022 (S.D.N.Y. 1987). Moreover, repeated requests to a union to institute proceedings do not normally suffice to toll the statute. *Christiansen*, 178 F.3d at 916 (collecting cases); *Vadino v. A. Valey Eng'rs*, 903 F.2d 253, 262 (3d Cir. 1990).

Yordán filed her complaint on September 14, 2012. In order to be within the statute of limitations, the Union's breach of duty must have taken place on or after March

14, 2012.  Yordán concedes that a 6-month statute of limitations applies. Opposition at 3. However, she argues that it has not run because she was not "'required to sue the union until . . . [the plaintiff] knew or should reasonably know that the union has abandoned [his or her] claim'" and she never received official notice that the Union had indeed abandoned her claim. *Id.* (quoting *Wilson v. International Teamsters*, 83 F.3d 747, 757 (6th Cir.)).

In *Metz*, the court found at the motion to dismiss stage that a mere seven months of inactivity was sufficient to put the plaintiff on notice that the union breached its duty. 715 F.2d at 304. Moreover, the court stressed that a plaintiff "cannot be allowed to sit back and claim a lack of notice in light of circumstances such as these." *Id.* Similarly, in *Christiansen*, a year of inactivity by the union, among other things, should have signaled to the plaintiff that the union had breached its duty. 178 F.3d at 914-15 (citing *Pantoja v. Holland Motor Exp., Inc.*, 965 F.2d 323, 327 (7th Cir. 1992)). And in *Pulliam v. UAW*, the lack of communication from the union for almost two years indicated that the union may have breached its duty. 354 F. Supp. 2d 868, 872 (W.D. Wisc. 2005).

Here, over two years elapsed between the email Yordán received from Soto and the filing of this suit. This extensive period of inaction should have indicated to Yordán that the Union may have breached its duty of fair representation, triggering the statute of limitations.

Yordán nevertheless argues that because she received a partial payment from the Union related to the arbitration award after filing her complaint, the Union never abandoned her claim. Opposition at 3. The breach of duty of fair representation that she claims, however, must have accrued at some point before the filing of her original complaint. This later activity by the Union has no bearing on the Union's actions by between 2007 and 2012 that constituted the breach of duty alleged in the complaint. Whether she has a new claim against them related to this later activity has no bearing on the present case and therefore no bearing on the statute of limitations.

Lastly, Yordán argues that the statute should be tolled because she has been actively pursuing intra-union remedies. *Id*. Yordán does not explain what internal remedies she is pursuing, but presumably means her letters to and meetings with the Union. *See* Complaint ¶¶ 3.10-14. Informal letters and meetings however do not trigger tolling. *See Ryder v. Phillip Morris, Inc.*, 946 F. Supp. 422, 433 (E.D. Va. 1996) ("Informal conversations . . . do not toll the limitations period."). Even assuming *arguendo* that these letters and meetings were formal enough, the statute is only tolled while a plaintiff makes diligent efforts to pursue internal appeals. *Howell*, 19 Fed. Appx. at 168. Yordán claims that she has been kept in the dark "despite the fact that she wrote a letter to Bell on March 8, 2010." No other allegations tend to show that she contacted anyone from the Union in the two years before she filed suit. In other words, there is no plausible claim that Yordán was pursuing formal remedies diligently. Her contacts with the Union therefore did not toll the statute of limitations.

In sum, her claim is time-barred and the Union is entitled to dismissal.

## CONCLUSION

For the foregoing reasons, the motion to dismiss is **GRANTED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 22nd day of July, 2013.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge